UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CELANESE CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:14-cv-04165-M |
| | § | |
| CLARIANT CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's Motion for Reconsideration [Docket Entry #27] and Motion for Leave to File First Amended Complaint [Docket Entry #31]. For the reasons stated below, both Motions are **DENIED**.

**I.    BACKGROUND**

Plaintiff Celanese is a Delaware corporation that develops and manufactures materials for consumer products. It previously operated as Hoechst Celanese Corporation ("Hoechst"), and has maintained its principal place of business in Dallas County since 2005. Defendant Clariant AG is a Swiss corporation, with its principal place of business in Switzerland.

In 1997, Hoechst, a New Jersey domiciliary, and Clariant AG entered into an Asset Purchase Agreement ("APA"), by which Hoechst conveyed to Clariant AG its specialty chemicals business, which had assets throughout the United States, including property, operations, and employees in Texas. The APA contained a choice of law provision, stating that it would be governed by Swiss law, and an arbitration provision, stating that all disputes under it would be resolved in Germany.

1

Celanese alleges here that the APA obligates Clariant AG, and its United States subsidiary, Clariant Corporation, to indemnify Celanese from liability arising out of toxic tort lawsuits in New Jersey and California. Celanese pled that Clariant AG "neither maintains a regular place of business nor a designated agent for service of process in Texas," and "has ceded management, liability and control of all North American business operations under the name 'Clariant' to Clariant US" (otherwise known as Clariant Corporation). Pet. [Docket Entry 1-3] at ¶¶ 4–5.

Clariant AG moved to dismiss the claims against it for lack of personal jurisdiction, and the Court granted the motion. Order [Docket Entry #24]. Celanese sought reconsideration of that Order, and asked for permission to file an amended complaint against Clariant AG to: 1) assert an alter-ego theory and otherwise clarify allegations relevant to personal jurisdiction; 2) allege that Clariant Corporation has admitted it is responsible for the APA's indemnification obligations pursuant to an Assignment and Assumption Agreement; 3) make various other modest changes.

## II. PLAINTIFF'S MOTION FOR RECONSIDERATION

### a. Legal Standard

Plaintiff seeks relief under Rule 54(b) and Rule 60(b). Under Rule 54(b), a court may revise any order "at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Under Rule 60(b), a court may relieve a party from a final order based on "mistake, inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

Plaintiff's Motion fails under either rule. Although the standard for reconsideration under Rule 54(b) "appear[s] to be less exacting" than that under Rule 60(b), a court's analysis

under both rules is similar. *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (Means, J.). "[W]hether to grant [a motion for reconsideration] rests within the broad discretion of the court." *Id.* (applying Rule 54(b)); *see also Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998) (applying Rule 60(b)); *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993). Motions for reconsideration "have a narrow purpose and are only appropriate to allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *Choice Hotels Intern., Inc. v. Goldmark Hospitality, LLC*, 2014 WL 642738, at *1 (N.D. Tex. Feb. 19, 2014) (Fitzwater, C.J.) (quotation omitted). They are not a "proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *Id.*

     b. **Discussion**

Celanese argues that the Court erred by finding: 1) that Clariant AG does not do business or have a physical presence in Texas; and 2) that Clariant AG's indemnity obligations to Celanese under the APA were not sufficient to subject Clariant AG to suit in Texas.

Celanese has not shown that this Court manifestly erred in concluding that Celanese did not establish personal jurisdiction over Clariant AG. As the party who sought to invoke the jurisdiction of the district court, Celanese bore the burden of "present[ing] facts sufficient to constitute a *prima facie* case of personal jurisdiction." *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). Because the Court did not hold an evidentiary hearing, it was required to take "uncontroverted allegations in the plaintiff's complaint . . . as true," and resolve "conflicts between the facts contained in the parties' affidavits . . . in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989) (quoting *D.J. Investments,* 754 F.2d at 545–46).

Celanese maintains that the Court relied too heavily on the concession in its Petition that Clariant AG does not maintain a regular place of business in Texas, and that the Court did not address Celanese's position that the business purchased by Defendants pursuant to the APA included assets in Texas.[1] The Court did consider such allegations. *See, e.g.*, Order [Docket Entry #24] at 7 (recognizing that "the APA involved the sale of some Texas assets"). To the extent that, by claiming that the purchased business does business and has employees in Texas, Plaintiff alleged that Clariant AG regularly conducts business or maintains an office in Texas, that allegation was controverted by a sworn affidavit of Alfred Münch, General Counsel of Clariant AG, stating that Clariant AG, as opposed to its subsidiaries, does not systematically do business in Texas or maintain a business location here. Def. App. [Docket Entry #18], Ex. 1, at ¶ 6. The APA does not conflict with that evidence. That a company once purchased a business with operations in Texas does not necessarily mean the buyer is thereafter doing business in Texas. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 759–60 (2014).

Celanese further objects that the Court did not consider evidence that "Clariant" operates in Texas. Mot. [Docket Entry #27] at 4. In fact, Celanese alleged that the American entity Clariant Corporation manages and controls "all North American business operations under the name 'Clariant.'" *See* Pet. [Docket Entry 1-3] at ¶¶ 4–5. The exhibits Celanese points to do not show that Clariant AG operates in Texas. *See* [Docket Entry #22], Ex. D–E at 64 – 67 (referring

---

[1] The APA transferred a business defined as: "[Hoechst's] specialty chemicals business consisting of the activities (including all assets and liabilities whether on the balance sheet or not) of its Business Units Auxiliaries and Surfactants, Pigments, Fine Chemicals, Polymerisates/Alkylose, Additives and its business groups Paper Chemicals and Monochloro Acetic Acid but excluding the Business Units and activities respectively of Food Ingredients, Separation Products, textile dyestuffs and bulk pharmaceuticals." Pl. App. [Docket Entry #22] at 95. At the time the parties entered into the APA, the specialty chemicals business operated in approximately half the states in the United States. *Id.* at 140.

to a "Clariant" facility in Texas as associated with "Clariant North America ICS"); Ex. F–G at 68–73 (listing advertised job opportunities at "Clariant" in Texas); Ex. H at 75–85 (promoting a global headquarters for Oil & Mining Services in Texas but not specifying whether Clariant AG or a subsidiary owns and operates the facility). Celanese thus has not made a *prima facie* case that Clariant AG regularly conducts business or has a physical location in Texas, and certainly has not shown the kind of continuous and systematic connections with Texas necessary to establish general jurisdiction. *See Daimler*, 134 S. Ct. at 2851.

Even if the evidence Celanese produced had referred to Clariant AG, Celanese has not shown that the current suit is sufficiently related to Clariant AG's alleged Texas connections for the Court to have specific jurisdiction over Clariant AG. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). As the Court originally found, the indemnification provision in the APA does not subject Clariant AG to personal jurisdiction in Texas merely because the acquired business had operations there. Op. [Docket Entry #24] at 6–7. Clariant AG could not "reasonably anticipate being haled into court" in Texas based merely on this provision, especially since the APA states that all disputes arising out of it are to be governed by Swiss law, and arbitrated in Germany. *Id.*

The Motion for Reconsideration does not identify a manifest error of law or fact nor present newly discovered evidence. It is therefore **DENIED**.

### III. PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Because the deadline for amending pleadings has expired, under Rule 16, Celanese is required to show good cause to amend. Fed. R. Civ. P. 16. On September 30, 2015, when Celanese filed its Motion for Leave, the deadline for filing amended pleadings under the

Scheduling Order was April 1, 2015 [Docket Entry #9]. The Amended Scheduling Order did not reopen the deadline for amending pleadings [Docket Entry #58].

In determining if good cause exists, courts consider: 1) the explanation for the failure to timely move for leave to amend; 2) the importance of the amendment; 3) potential prejudice in allowing the amendment; and 4) the availability of a continuance to cure such prejudice. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003)

Celanese claims it needs to amend in order to: 1) assert an alter-ego theory and clarify its allegations relevant to personal jurisdiction; 2) allege that Clariant Corporation has admitted that, pursuant to an Assignment and Assumption Agreement, it is responsible for indemnification obligations in the APA; and 3) make other modest clarifying changes.

The Court finds that Celanese has not shown good cause. In particular, Celanese has failed to adequately explain its failure to move in a timely manner. Until the Court dismissed Clariant AG for lack of personal jurisdiction, Celanese argues, it did not think it needed to add an alter-ego theory or clarify its jurisdictional allegations to retain jurisdiction. This is not sufficient to demonstrate good cause.

Celanese maintains that it reasonably chose not to pursue an alter-ego theory earlier, because Clariant AG did not challenge personal jurisdiction until May of 2015, after the deadline for amendments had passed. However, Celanese did not attempt to amend for approximately four months after Clariant AG challenged jurisdiction, months in which the Court considered and resolved the issue. Celanese also claims recently discovered evidence supports its alter-ego theory, but it does not explain when the alleged evidence was discovered or why Celanese did not attempt to discover it sooner (other than the insufficient reason that Celanese mistakenly believed it had already made a *prima facie* case). Indeed, Celanese's evidence comes from

publicly available documents. Celanese has not sufficiently explained why it did not present argument and evidence supporting an alter-ego theory or otherwise clarify its jurisdictional allegations in a timely manner.

Additionally, allowing Celanese to try once again to establish jurisdiction over Clariant AG would prejudice Defendants, who have already briefed the issue of personal jurisdiction twice—through their Motion to Dismiss and Celanese's Motion for Reconsideration.

Celanese similarly fails to explain why it delayed in adding allegations regarding Clariant Corporation's responsibility for indemnification obligations under the APA pursuant to the Assignment and Assumption Agreement. Celanese maintains that Clariant Corporation made an admission of such responsibility in a response to a request for admission in August 2015. However, Celanese does not dispute that its predecessor Hoechst was a party to the Assignment and Assumption Agreement, executed in 1997, and thus cannot express reasonable surprise about it as a basis for Clariant Corporation's liability. Celanese has always proceeded in this case on the theory that Clariant Corporation is liable under the APA. *See* Pet. [Docket Entry 1-3] at ¶¶ 4–5 (alleging that Clariant Corporation manages and controls "all North American business operations under the name 'Clariant'"); *id* at ¶ 28 ("Clariant US is the only entity to participate in any post-Closing Date communication with Celanese concerning the APA."); *id.* at ¶¶ 31, 38 (asking for a declaratory judgment that "*Defendants* are obligated to pay Celanese the full amount of Celanese' losses") (emphasis added); *id.* at ¶¶ 35, 42 (arguing that *Defendants* breached contractual obligations under the APA). Thus, if Celanese thought it was important to obtain an admission regarding Clariant Corporation's obligations under the APA as a predicate to amending its complaint, Celanese was not reasonably diligent in seeking such an admission.

Celanese also has not explained why it is important that it file an amended complaint to specify that Clariant Corporation admitted responsibility for the obligations under the APA. Document Entry #31, at 8.  Although Clariant Corporation's admission may be important, the Court is not persuaded that it must be alleged in the complaint.  Finally, Celanese does not show good cause to make the other changes it proposes.

For all these reasons, the Court does not find good cause for allowing Celanese to file an untimely amended complaint, and Celanese's Motion is **DENIED**.

## IV.   CONCLUSION

Plaintiff's Motion for Reconsideration [Docket Entry #27] and Motion for Leave to File First Amended Complaint [Docket Entry #31] are **DENIED**.

**SO ORDERED.**

March 7, 2016.

*[signature]*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**